IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STATE FARM FIRE AND CASUALTY COMPANY** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 22-190** |
| | : | |
| **CATHERINE RUFFENACH,** *et al* | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                                       **April 4, 2022**

Five Jane Does are presently suing a spa owner and his wife in state court after the spa owner's employee allegedly sexually assaulted the five women. The Jane Does are suing the spa owner's wife for allegedly knowing of the masseur's sexual abuse both in the spa and other businesses but not stopping him. The spa owner and his wife purchased a homeowners insurance policy agreeing their insurer need not defend or indemnify them for damages arising out of business pursuits of any insured. The homeowners' insurer now asks we declare it has no duty to defend or indemnify the spa owner or his wife in the ongoing Jane Doe lawsuits. The spa owner's wife argues she is not involved with her husband's business pursuit—the spa—but is nevertheless being sued for negligence, which is a covered claim under her homeowners' insurance policy. She wants her insurer to continue paying her costs of defense and indemnify her should she be found liable.

We grant the insurer's motion for declaratory judgment finding the spa owner and his wife agreed to a business pursuits exclusion to coverage. The parties agreed the insurer need not cover damages arising from any insured's business pursuit. Jane Does' claims arise from, at the minimum, the spa owner's continuous and profit-motivated spa business. We enter judgment for

the insurer declaring it has no obligation to defend or indemnify the spa owner's wife in the Jane Doe lawsuits in state court.

I. **Alleged facts in the pleadings.**

Husband and wife Gerard and Catherine Ruffenach together own a home in this District.[1] They purchased homeowners insurance policies from State Farm Fire and Casualty Company covering them for defined losses from April 2015 through April 2019.[2] They are both named as "Insureds" in their insurance policies.[3] State Farm and the Ruffenachs agreed State Farm would defend the Ruffenachs against any claim or suit "for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence."[4] The parties agreed to define "bodily injury" as "physical injury, sickness, or disease to a person."[5] The parties defined "occurrence" as "an accident, including exposure to conditions, which first results in [] bodily injury; or [] property damage."[6]

The Ruffenachs agreed State Farm would not cover claims or suits arising from any insured's business pursuits. The "business pursuits exclusion" excuses State Farm's obligation to defend the Ruffenachs against suits claiming "bodily injury or property damage arising out of business pursuits of any insured."[7] The parties agreed to define "business" as "a trade, profession or occupation."[8]

*Five Jane Does sue the Ruffenachs alleging a masseur sexually assaulted them.*

Gerard Ruffenach owns the "Phoenixville-Oaks Hand and Stone Massage and Facial Spa" ("Oaks") in this District.[9] Five Jane Does sued the Ruffenachs in three lawsuits in the Philadelphia Court of Common Pleas (collectively, the "Underlying Lawsuits") alleging an Oaks employee sexually assaulted them. State Farm and Catherine Ruffenach dispute whether State Farm must provide Catherine Ruffenach with a defense and indemnity in the three lawsuits.

The five Jane Does allege the Ruffenachs employed masseur Steven Waldman at Oaks.[10] Mr. Waldman allegedly sexually assaulted one Jane Doe at Oaks, then sexually assaulted the four other Jane Does at his private massage business after the Ruffenachs employed him. The five Jane Does claim their lawsuits regard "the Ruffenachs' decision not to report Steven Waldman . . . after they learned he was a danger to women."[11] The five Jane Does allege Catherine Ruffenach and Gerard Ruffenach "were owners, officers and/or directors of Oaks" and "are liable to [the Jane Does] because of their failures to act, their failure to act constituted a breach of their duties as owner, officers and/or directors; and/or their breach of those duties involved intentional misconduct, fraud or a knowing violation of law."[12]

In the first lawsuit ("Underlying Lawsuit No. 1"), three Jane Does allege Mr. Waldman sexually assaulted them while purporting to give them massages at his private business, Steven Waldman Massage, after the Ruffenachs employed him at Oaks.[13] The police arrested Mr. Waldman after he allegedly assaulted the women.[14] The three women sue Hand and Stone Franchise Corporation; Ruffenach, G., LLC; Catherine Ruffenach and Gerard Ruffenach; Steven M. Waldman; and Steven Waldman Massage.[15] The women sue the Ruffenachs for vicarious liability for Mr. Waldman's acts, negligence for allowing Mr. Waldman to work at Oaks, negligence per se, and negligent infliction of emotional distress.[16] They plead the Ruffenachs owed "a duty to reasonably report" Mr. Waldman, a "sexual predator[]" in the Ruffenachs' employ.[17]

In the second underlying lawsuit ("Underlying Lawsuit No. 2"), Jane Doe alleges Mr. Waldman assaulted her while he worked for Oaks.[18] Jane Doe sues the same defendants named in Underlying Lawsuit No. 1 except for Steven Waldman Massage.[19] Jane Doe sues the Ruffenachs for vicarious liability, negligence, negligent performance of undertaking to render services, negligence per se, negligent infliction of emotional distress, negligent misrepresentation,

3

fraudulent concealment, and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Act.[20] Jane Doe premises her claims on the Ruffenachs permitting Mr. Waldman—their employee—to sexually assault her.[21]

In the third underlying lawsuit ("Underlying Lawsuit No. 3"), a fifth Jane Doe alleges Mr. Waldman assaulted her at Steven Waldman Massage after the Ruffenachs employed him.[22] Jane Doe sues the Ruffenachs for negligence, negligence per se, negligent infliction of emotional distress, and vicarious liability.[23] She pleads the Ruffenachs knew about Mr. Waldman's sexual assaults while they employed him yet did not report him.[24]

### *State Farm asks we declare its coverage obligations.*

State Farm disclaimed coverage for Gerard Ruffenach.[25] But State Farm is defending Catherine Ruffenach in the Underlying Lawsuits under a reservation of rights.[26] State Farm now asks us to declare it need not defend or indemnify the Ruffenachs in the Underlying Lawsuits.[27] Gerard Ruffenach did not respond to State Farm's Complaint and is presently in default.

**II.     Analysis**

State Farm moves for judgment on the pleadings against Catherine Ruffenach.[28] State Farm argues it need not defend Catherine Ruffenach in the Underlying Lawsuits because the policies' business pursuits exclusion excludes coverage for the five Jane Does' claims arising out of Gerard Ruffenach's ownership of Oaks.[29] Catherine Ruffenach responds State Farm must continue defending her because, despite the Jane Does' allegations, she had no involvement with Oaks.[30] State Farm concedes Catherine Ruffenach did not own Oaks but argues the business pursuits exclusion still applies because it bars coverage for damages relating to the business pursuits of "*any* insured."[31]

We find the business pursuits exclusion bars coverage because the Jane Does' claims against Catherine Ruffenach arise out of Gerard Ruffenach's business pursuit–Oaks. State Farm

need not defend Catherine Ruffenach in the Underlying Lawsuits. Because State Farm need not defend Catherine Ruffenach, it need not indemnify her either.

### A. State Farm need not defend Catherine Ruffenach in the Underlying Lawsuits.

Our coverage analysis today entails two steps. Only the second step is contested.

First, the insured "has the initial burden of establishing coverage under the policy."[32] This burden "is light," as "Pennsylvania law imposes on insurers a broad duty to defend lawsuits brought against those they insure."[33] State Farm does not contest whether Catherine Ruffenach establishes coverage within the policies' terms. Second, once the insured establishes the policy provides coverage, the burden shifts to the insurer to show policy exclusions nonetheless exclude coverage.[34] We must "construe the exclusions in favor of coverage."[35] State Farm argues the business pursuits exclusion precludes coverage.

Fundamental coverage principles determine the business pursuits exclusion's applicability. "Under Pennsylvania law, an insurer has a duty to defend if the complaint filed by the injured party potentially comes within the policy's coverage."[36] "An insurer must defend its insured until it becomes absolutely clear that there is no longer a possibility that the insurer owes its insured a defense."[37] The duty to defend "even extends to actions that are 'groundless, false, or fraudulent' as long as there exists the possibility that the allegations implicate coverage."[38] "[I]f a single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim."[39]

The "four corners rule" generally governs whether an insurer must defend its insured.[40] The four corners rule requires us to "compar[e] the four corners of the insurance contract to the four corners of the [underlying] complaint[s]."[41] "Under the four corners rule, a court in determining if there is coverage does not look outside the allegations of the underlying

5

complaint[s] or consider extrinsic evidence."[42] We view the allegations of the underlying action[s] as true and liberally construe them in favor of the insured.[43]

Limited exceptions to the four corners rule exist. For example, "[e]xtrinsic evidence may be used to either: (1) rebut the insurer's contention that a policy exclusion bars coverage, or (2) to show that an exception to an exclusion does not apply."[44] These exceptions "favor[] the insured" because only the insured may introduce extrinsic evidence to rebut the insurer's arguments.[45] The parties here agree an exception to the four corners rule applies to rebut State Farm's contention the business pursuits exclusion applies. Every Jane Doe claims Catherine Ruffenach owns Oaks. But State Farm concedes, and Catherine Ruffenach agrees, Catherine Ruffenach does not actually own Oaks despite the underlying allegations; only Gerard Ruffenach owns Oaks.[46] We analyze State Farm's duty to defend disregarding the Jane Does' claims Catherine Ruffenach owns Oaks.

Having established the coverage framework, we now examine the business pursuits exclusion agreed to by the Ruffenachs and State Farm. The business pursuits exclusion excludes coverage for bodily injury "arising out of business pursuits of any insured." Pennsylvania courts interpret exclusions using the phrase "any insured" to bar coverage to all insureds under homeowners policies arising out of any insured's excluded conduct.[47] Our analysis of the business pursuits exclusion raises two questions. First, do the Underlying Lawsuits allege any insured had a business pursuit? Second, do the underlying claims allege bodily injury "arising out of" the business pursuit?

We answer both questions affirmatively. The business pursuits exclusion excludes coverage because the Underlying Lawsuits allege bodily injury arising from Gerard Ruffenach's business pursuit, Oaks.

### 1. Gerard Ruffenach's ownership of Oaks constituted a business pursuit.

Our Court of Appeals instructs a "business pursuit" requires two elements: (1) "continuity, or customary engagement in the activity," and (2) "profit motive," "shown by such activity as a means of livelihood, a means of earning a living, procuring subsistence or profit, commercial transactions or engagements."[48]

Each Jane Doe alleges Oaks constituted a business pursuit of an insured, Gerard Ruffenach. The Jane Does allege Gerard Ruffenach owned, officered, or directed Oaks continuously. They allege Gerard Ruffenach owned Oaks "at all relevant times mentioned herein."[49] In Underlying Lawsuit No. 1, the relevant times encompassed June 2017, when Mr. Waldman allegedly sexually assaulted Jane Doe, through Mr. Waldman's arrest in December 2018.[50] In Underlying Lawsuit No. 2, the relevant times encompassed 2015, when Jane Doe purchased her first Oaks massage, until late 2018 when Mr. Waldman got arrested.[51] And in Underlying Lawsuit No. 3, the relevant times encompassed May 2017—when online reviewers began warning about Mr. Waldman's conduct—through June 2018, when Mr. Waldman allegedly assaulted Jane Doe.[52] Jane Does' allegations of ownership spanning several years show Gerard Ruffenach's continuous engagement in owning Oaks.[53] Each Jane Doe also alleges Gerard Ruffenach owned Oaks for a profit motive. Each Jane Doe alleges Gerard Ruffenach owned a business which employed Mr. Waldman and sold massage services to customers, which are commercial transactions evincing Mr. Ruffenach's profit motive.[54] Gerard Ruffenach's role as owner, officer, or director of Oaks constitutes an occupation, which is how the policies define a "business."[55] Oaks is Gerard Ruffenach's business pursuit.

### 2. The bodily injury arises out of Gerard Ruffenach's business pursuit.

The underlying bodily injury must also "aris[e] out of" the business pursuit. This means the injury "is causally connected to the business of the insured."[56] "'But for' causation, *i.e.*, a cause and result relationship," satisfies the "arising out of" requirement.[57]

The Jane Does' bodily injury claim against Catherine Ruffenach arise out of Gerard Ruffenach's business pursuit of owning Oaks. Each Jane Doe alleges Catherine Ruffenach caused their bodily harm by failing to prevent Mr. Waldman's sexual assaults despite Catherine Ruffenach's purported knowledge of Mr. Waldman's conduct. Catherine Ruffenach only gained this knowledge from Gerard Ruffenach's business pursuit of owning Oaks.[58] But for Gerard Ruffenach owning Oaks, Catherine Ruffenach would not have had knowledge of Mr. Waldman's dangerousness. This nexus satisfies the "arising out of" clause.

Catherine Ruffenach's arguments do not persuade us. For example, she argues the Jane Does incorrectly plead she owned Oaks, so the Jane Does must plead she is liable to them irrespective of her Oaks involvement. This argument is unpersuasive for two reasons. First, it disregards the business pursuits exclusion's use of the term "*any* insured." The Jane Does allege Gerard Ruffenach, an insured, owned Oaks. His ownership of Oaks caused him and Catherine Ruffenach to gain knowledge of Mr. Waldman's sexual abuse. It does not matter whether Catherine Ruffenach did not own Oaks because the parties here do not dispute Gerard Ruffenach owned Oaks. Gerard Ruffenach's ownership of Oaks is the but-for cause of Catherine Ruffenach's involvement in the Underlying Lawsuits. Second, Catherine Ruffenach's argument disregards the four corners rule governing our analysis today.[59] Accepting Catherine Ruffenach does not own Oaks does not allow us to rewrite Jane Does' claims against her. Regardless of whether Catherine Ruffenach owned Oaks, the Jane Does still allege she gained knowledge of Mr. Waldman's conduct and a duty to prevent his conduct through Gerard Ruffenach's employment of Mr.

8

Waldman.[60] Catherine Ruffenach's non-ownership of Oaks is perhaps a substantive defense in the Underlying Lawsuits. But it does not obligate State Farm to continue defending Catherine Ruffenach because the claims against her arise from Gerard Ruffenach's business pursuit of owning Oaks.

Catherine Ruffenach argues the Jane Does plead she owed them legal duties irrespective of Oaks's existence because she should have reported Mr. Waldman regardless of her husband's ownership of Oaks. We disagree. We must examine the Jane Does' complaints' "factual averments"—not "simply on the labels applied to those averments"—to determine an exclusion's applicability.[61] The Jane Does allege they suffered bodily injury because Gerard Ruffenach undertook a business pursuit which revealed Mr. Waldman's dangerousness, yet Catherine Ruffenach did not stop it. The Jane Does claim the Ruffenachs "are liable to [the Jane Does] because of their failures to act, their failure to act constituted ***a breach of their duties as owner, officers and/or directors***; and/or their ***breach of those duties*** involved intentional misconduct, fraud or a knowing violation of law."[62] Gerard Ruffenach's ownership of Oaks is essential to the Jane Does' claims against the Ruffenachs.

Catherine Ruffenach argues we cannot resolve the duty to defend question at the pleadings stage because extrinsic evidence is needed to determine the applicability of the business pursuits exclusion. We again disagree. Catherine Ruffenach does not explain what admitting extrinsic evidence would accomplish. She does not challenge Gerard Ruffenach's ownership of Oaks, which brings the Underlying Lawsuits within the business pursuits exclusion's reach. Catherine Ruffenach argues the Jane Does are still "vigorously" pursuing claims against her even though she did not own Oaks, so we should consider extrinsic evidence to understand their litigation strategy.[63] But the Jane Does' litigation strategy does not affect our analysis today. The Jane Does

9

plead Catherine Ruffenach owed them a legal duty because of Oaks; the viability of their subsequent litigation strategy should be determined in the state court.

Extending coverage to the claims against Catherine Ruffenach would subvert the purpose of a homeowners insurance policy. Business pursuits exclusions come "standard" in homeowners insurance policies.[64] They exist to "keep premiums at a reasonable level by eliminating a type of coverage that (1) normally requires specialized underwriting and rating, (2) is not essential to most purchasers of the policy, and (3) is provided by other insurance contracts a business owner is likely to have."[65] Permitting coverage would effectively reform this homeowners policy into a business liability policy. Catherine Ruffenach agreed she would not be covered for bodily injury arising from business pursuits of either herself or her husband—the other "homeowner" in the "homeowners" policy. We decline to read the homeowners policy as broadly as Catherine Ruffenach suggests.

**B. State Farm need not indemnify Catherine Ruffenach in the Underlying Lawsuits.**

An insurer's duty to indemnify is narrower than its duty to defend.[66] The duty to indemnify "flows from a determination that the complaint triggers coverage."[67] The question of an insurer's duty to indemnify is sometimes unripe before a finding of damages against the insured in the underlying actions.[68] But ripeness concerns fade upon a finding the insurer need not defend its insured because "a duty to indemnify cannot exist without a duty to defend."[69] State Farm need not indemnify Catherine Ruffenach for damages in the Underlying Lawsuits because State Farm has no duty to defend her.

**III. Conclusion**

An insurer asks us to declare it need not defend or indemnify its insured against claims the insured should have prevented her husband's employee from sexually assaulting customers under

a homeowners insurance policy. We find the insurer need not defend the insured homeowner because the parties agreed the insurer's business pursuits exclusion allows it to decline coverage.

---

[1] ECF Doc. No. 1 ¶¶ 5, 7.

[2] ECF Doc. No. 1 ¶ 10.

[3] ECF Doc. No. 1-3 at 9; ECF Doc. No. 1-4 at 3; ECF Doc. No. 1-5 at 11.

[4] ECF Doc. No. 1-3 at 29; ECF Doc. No. 1-4 at 21; ECF Doc. No. 1-5 at 30.

[5] ECF Doc. No. 1-3 at 15; ECF Doc. No. 1-4 at 7; ECF Doc. No. 1-5 at 16.

[6] ECF Doc. No. 1-3 at 40; ECF Doc. No. 1-4 at 32; ECF Doc. No. 1-5 at 41.

[7] ECF Doc. No. 1-3 at 30; ECF Doc. No. 1-4 at 22; ECF Doc. No. 1-5 at 31. The exclusion does not apply:

1) to activities which are ordinarily incident to non-business pursuits;

2) with respect to [personal liability coverage] to the occasional or part-time business pursuits of an insured who is under 19 years of age;

3) to the rental or holding for rental of a residence of yours:

    a. on an occasional basis for the exclusive use as a residence;

    b. in part, unless intended for use as a residence by more than two roomers or boarders; or

    c. in part, as an office, school, studio or private garage;

4) when the dwelling on the residence premises is a two, three or four-family dwelling and you occupy one part and rent of hold for rental the other part; or

5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

Neither party argues any of these five exceptions to the exclusion apply.

[8] ECF Doc. No. 1-3 at 15; ECF Doc. No. 1-4 at 7; ECF Doc. No. 1-5 at 16.

[9] ECF Doc. No. 1-6 ¶¶ 4–5; ECF Doc. No. 1-7 ¶¶ 4–5; ECF Doc. No. 1-8 ¶¶ 4–5.

[10] ECF Doc. No. 1-6 ¶ 6; ECF Doc. No. 1-7 ¶ 6; ECF Doc. No. 1-8 ¶ 6.

---

[11] ECF Doc. No. 1-6 ¶ 13; ECF Doc. No. 1-7 ¶ 13. Underlying Lawsuit No. 3 contains very similar language. *See* ECF Doc. No. 1-8 ¶ 13 ("This Lawsuit is about . . . the Ruffenachs[] failing to report Defendant Waldman's dangerous propensities and criminal conduct.").

[12] ECF Doc. No. 1-6 ¶ 5; ECF Doc. No. 1-7 ¶ 5; ECF Doc. No. 1-8 ¶ 5.

[13] *See* Compl., *Jane Doe, et al. v. Hand and Stone Franchise Corp., et al.*, No. 190804964 (Phila. Cnty. Ct. Com. Pl. Oct. 17, 2019); ECF Doc. No. 1-6 ¶ 6; *id.* ¶¶ 25–69.

[14] *See, e.g.*, ECF Doc. No. 1-6 ¶ 39.

[15] ECF Doc. No. 1-6 at 2.

[16] ECF Doc. No. 1-6 at 15–29.

[17] ECF Doc. No. 1-6 ¶ 80; ECF Doc. No. 1-7 ¶ 55; ECF Doc. No. 1-8 ¶ 86.

[18] *See* Compl., *Jane Doe v. Hand and Stone Franchise Corp., et al.*, No. 190903709 (Phila. Cnty. Ct. Com. Pl. Nov. 13, 2019); *see also* ECF Doc. No. 1-7 ¶¶ 26–27.

[19] ECF Doc. No. 1-7 at 2.

[20] ECF Doc. No. 1-7 ¶¶ 45–98.

[21] ECF Doc. No. 1-7 ¶¶ 45–98.

[22] *See* Compl., *Jane Doe v. Hand and Stone Franchise Corp., et al.*, No. 200600914 (Phila. Cnty. Ct. Com. Pl. Jun. 19, 2020; ECF Doc. No. 1-8 ¶ 6; *id.* ¶ 42.

[23] ECF Doc. No. 1-8 at 20–24; 32; 37.

[24] ECF Doc. No. 1-8 ¶ 94.

[25] ECF Doc. No. 1 ¶ 22.

[26] ECF Doc. No. 1 ¶ 21; ECF Doc. No. 9 ¶ 21.

[27] ECF Doc. No. 1. Our Clerk of Court entered default against Gerard Ruffenach. ECF Doc. No. 16.

[28] ECF Doc. No. 15. A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). We analyze motions for judgment on the pleadings "under the same standards that apply to a Rule 12(b)(6) motion." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (quoting *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)). We "must view

the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Vitamin Energy, LLC v. Evanston Ins. Co.*, 22 F.4th 386, 392 n.6 (3d Cir. 2022) (quoting *Wolfington*, 935 F.3d at 195). We may only grant a motion for judgment on the pleadings if "the movant clearly establishes" no "material issue of fact remains to be resolved" and the movant "is entitled to judgment as a matter of law." *Id.* (quoting *Wolfington*, 935 F.3d at 195). We may consider only "the complaint, exhibits attached to the complaint, matters of public record," and "undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

[29] ECF Doc. No. 1 ¶¶ 83–98.

[30] ECF Doc. No. 22.

[31] ECF Doc. No. 15 at 13–15 (emphasis added).

[32] *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, 507 F. Supp. 3d 616, 621 (E.D. Pa. 2020).

[33] *Vitamin Energy, LLC v. Evanston Ins. Co.*, 22 F.4th 386, 388 (3d Cir. 2022).

[34] *Newchops*, 507 F. Supp. 3d at 621.

[35] *Vitamin Energy*, 22 F.4th at 394–95.

[36] *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005).

[37] *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673–74 (3d Cir. 2016).

[38] *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010); *see also Vitamin Energy*, 22 F.4th at 392 (quoting *Jerry's Sport*, 2 A.3d at 541) (providing same rule).

[39] *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999).

[40] *Ramara*, 814 F.3d at 673.

[41] *Vitamin Energy*, 22 F.4th at 392 (second alteration in original) (quoting *Erie Ins. Exch. v. Moore*, 228 A.3d 258, 265 (Pa. 2020)).

[42] *Ramara*, 814 F.3d at 673.

[43] *Id.* (quoting *Frog, Switch & Mfg Co.*, 193 F.3d at 746); *see also Vitamin Energy*, 22 F.4th at 392 (we must construe the underlying complaint "in favor of coverage").

[44] *Foremost Ins. Co. v. Nosam, LLC*, 343 F. Supp. 3d 448, 455 (E.D. Pa. 2018) (citing *Unitrin Direct Ins. Co. v. Esposito*, 280 F. Supp. 3d 666, 670–71 (E.D. Pa. 2017)).

---

[45] *Foremost*, 343 F. Supp. 3d at 455 (quoting *Liberty Mut. Fire Ins. Co. v. Skorochod*, No. 15-cv-4365, 2018 WL 487838, at *3 (E.D. Pa. Jan. 19, 2018)).

[46] *See, e.g.*, ECF Doc. No. 1 ¶ 80 ("G[erard] Ruffenach owned the Oaks Spa franchise location."); *id.* ¶ 87 ("The Business Pursuits Exclusion excludes coverage for the Ruffenachs for the Underlying Actions, because the injuries alleged in the Underlying Actions arise out of G[erard] Ruffenachs' [*sic*] business pursuits."); *id.* ¶ 93 ("G[erard] Ruffenach open [*sic*] the Hand and Stone Oaks Spa as a profit making venture."); *id.* ¶ 94 ("All available facts demonstrate that the Oaks Spa was a business pursuit of G[erard] Ruffenach.").

[47] *See, e.g.*, *Donegal Mut. Ins. Co. v. Baumhammers*, 893 A.2d 797, 818 (Pa. Super. Ct. 2006), *aff'd in part, rev'd in part on other grounds*, 938 A.2d 286 (Pa. 2007).

[48] *Sun All. Ins. Co. of Puerto Rico v. Soto*, 836 F.2d 834, 836 (3d Cir. 1988); *see also Still v. Great N. Ins. Co.*, 254 F. App'x 125, 127 (3d Cir. 2007) (restating two elements for "business pursuit").

[49] ECF Doc. No. 1-6 at ¶ 5; ECF Doc. No. 1-7 ¶ 5; ECF Doc. No. 1-8 ¶ 5.

[50] ECF Doc. No. 1-6 ¶ 27 (Jane Doe 1's massage in June 2017); *id.* ¶ 67 (Mr. Waldman's arrest in 2018).

[51] ECF Doc. No. 1-7 at ¶ 21 (Jane Doe's first massage appointment); *id.* ¶ 34 (Mr. Waldman's arrest in 2018).

[52] ECF Doc. No. 1-8 ¶¶ 28, 40.

[53] *See, e.g.*, *Still*, 254 F. App'x at 127 (insured's "different leadership positions" spanning five years at company constituted customary engagement in activity); *Travelers Indem. Co. v. Fantozzi By & Through Fantozzi*, 825 F. Supp. 80, 85 (E.D. Pa. 1993) (daily babysitting spanning four years showed continuity).

[54] *See, e.g.*, *Still*, 254 F. App'x at 128 (employment by and investment in a company shows profit motive).

[55] *See, e.g.*, *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 839 (M.D. Pa. 1995) (occupation of professor "clear[ly]" constituted a business pursuit where the policy defined a business pursuit as "profession" or "occupation").

[56] *Still.*, 254 F. App'x at 128 (citing *Aetna Cas. & Sur. Co.*, 903 F. Supp. at 840).

[57] *Forum Ins. Co. v. Allied Sec., Inc.*, 866 F.2d 80, 82 (3d Cir. 1989) (italics added) (quoting *McCabe v. Old Republic Ins. Co.*, 228 A.2d 901, 903 (Pa. 1967)).

[58] *See, e.g.*, ECF Doc. No. 1-6 ¶ 78 ("[T]he Ruffenachs were aware of sexual assaults and/or inappropriate touching committed by Waldman ***while he was an employee at [Oaks]*** . . . but chose

not to report same to law enforcement and/or the Pennsylvania Massage Therapy Board despite a duty to do so." (emphasis added); ECF Doc. No. 1-7 ¶ 54 (same); ECF Doc. No. 1-8 ¶ 84 (same).

[59] State Farm also repeatedly disregards the four corners rule by frequently citing extrinsic evidence of deposition testimony from the underlying actions. *See, e.g.*, ECF Doc. No. 1 ¶¶ 72–82; ECF Doc. No. 15 at 12–13; ECF Doc. No. 23 at 5. We consider this evidence today only for the limited purpose of establishing Catherine Ruffenach did not own Oaks because she agrees she did own Oaks. We otherwise disregard it because "extrinsic evidence may be used to demonstrate the possibility of coverage, but not to exclude it." *Unitrin*, 280 F. Supp. 3d at 671.

[60] *See, e.g.*, ECF Doc. No. 1-6 ¶ 80 (the Ruffenachs "owed to the public in general, and to Plaintiffs in particular, a duty to reasonably report . . . individuals who it knew, or should have known, were sexual predators *that were in its employ or service*" (emphasis added); ECF Doc. No. 1-7 ¶ 55; ECF Doc. No. 1-8 ¶ 86.

[61] *State Auto. Mut. Ins. Co. v. Lucchesi*, No. 11-0735, 2012 WL 2009355, at *5 (M.D. Pa. June 5, 2012) (citing *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F. 3d 105, 116 (3d Cir. 2009)), *aff'd,* 563 F. App'x 186 (3d Cir. 2014)).

[62] ECF Doc. No. 1-6 ¶ 5; ECF Doc. No. 1-7 ¶ 5; ECF Doc. No. 1-8 ¶ 5 (emphases added).

[63] ECF Doc. No. 22 at 13.

[64] *Canal Ins. Co.*, 435 F.3d at 437.

[65] *Id.* (quoting *Avoiding the "Business Pursuits" Exclusion—Insured's Activity as Not Business Pursuit,* 15 Am. Jur. Proof of Facts 3d 515 § 1 (West 2005)).

[66] *Ramara*, 814 F.3d at 673–74 (quoting *Sikirica*, 416 F.3d at 225).

[67] *QBE Ins. Corp. v. Walters*, 148 A.3d 785, 788 (Pa. Super. Ct. 2016).

[68] *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Dabbene*, 511 F. Supp. 3d 600, 615 n.6 (E.D. Pa. 2021) (detailing ripeness concerns with indemnity questions).

[69] *Permanent Gen. Ins. Corp. of Ohio v. McDevitt*, No. 5:19-CV-04619, 2020 WL 1329657, at *2 (E.D. Pa. Mar. 23, 2020); *see also Am. Nat. Prop. & Cas. Companies v. Hearn*, 93 A.3d 880, 884 (Pa. Super. Ct. 2014); *see also Dabbene*, 511 F. Supp. 3d at 615 n.6.